UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUDSON SAVINGS BANK,<br><br>                       Plaintiff,<br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY,<br>                       Defendant. | 06 CA 11967 RGS |

**PROGRESSIVE CASUALTY INSURANCE COMPANY'S
OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
PORTIONS OF THE AFFIDAVIT OF DOUGLAS R. EMERICK**

Pursuant to Fed. R. Civ. P. 26(a) and 26(e)(2), defendant Progressive Casualty Insurance Company ("Progressive") hereby opposes Hudson Savings Bank's ("Hudson") Motion to Strike Portions[1] of the Affidavit of Douglas R. Emerick submitted in Support of Progressive's Motion for Summary Judgment ("Hudson Motion to Strike") [docket entry no. 80] for the following reasons:

(1)    the Supplemental Report permissibly added to and/or clarified the expert opinions and testimony which Douglas R. Emerick, Progressive's materiality expert, intends to offer at trial, and it did not change or contradict his prior opinions or the undisputed evidence of materiality presented in this case;

(2)    Progressive supplemented its expert disclosures timely and as required under the Federal Rules of Civil Procedure;

---

[1] Namely, paragraphs 7, 25, 26, 28, 29, and 30, which rely upon the Supplemental Report issued by Douglas R. Emerick.

(3) the Supplemental Report was served as part of the expert discovery phase in this case, and was not generated for the purpose of opposing Hudson's renewed motion for summary judgment, as suggested by Hudson; and

(4) Progressive should not be penalized for acting in accordance with its rights and obligations under the Federal Rules of Civil Procedure.

In support of its Opposition, Progressive submits a Fourth Affidavit of Douglas R. Emerick ("*Emerick Aff. IV*").

## INTRODUCTION

On January 17, 2008, Hudson took the deposition of Douglas R. Emerick ("Mr. Emerick"), Progressive's expert on the issue of materiality. On January 29, 2008, Mr. Emerick's deposition transcript was sent electronically to counsel in this case, and forwarded to Mr. Emerick. *Emerick Aff. IV,* ¶103, Exh. 12. Within thirty (30) days of receipt of the transcript, Mr. Emerick reviewed his deposition transcript, made clarifications and corrections to his deposition testimony on the Errata Sheet, and executed the Errata Sheet under the pains and penalties of perjury. *Id.,* ¶ 104; *see also Second Affidavit of Deborah S. Griffin* ("*Griffin Aff. II*") [docket entry no. 69], ¶ 19, Exh. S (Errata Sheet dated February 25, 2008). Having reviewed his deposition testimony, Mr. Emerick, at the request of counsel for Progressive, issued a Supplemental Report that added to and/or elaborated on the opinions stated in Mr. Emerick's initial written report and clarified any misunderstanding created by Mr. Emerick's responses to certain deposition questions posed by Hudson's counsel. *See Emerick Aff. IV,* ¶117. The Supplemental Report, dated February 26, 2008, and the Errata Sheet were promptly provided to Hudson's counsel via e-mail on February 28, 2008, within thirty (30) days after counsel first received a copy of the transcript. *See Griffin Aff. II,* ¶¶20-21, Exh. T-U.

The applicable deadline for filing dispositive motions in this case was March 28, 2008. Oppositions to the dispositive motions, including motions for summary judgment, were due May 7, 2008. The Court has scheduled a hearing on the motions for summary judgment for June 17, 2008. No trial date has been set and no pre-trial conference has been scheduled in this case.

I. **THE SUPPLEMENTAL REPORT ADDED TO AND FURTHER CLARIFIED THE EXPERT OPINIONS AND TESTIMONY MR. EMERICK INTENDS TO OFFER AT TRIAL, AND IT DID NOT CHANGE OR CONTRADICT ANY PRIOR OPINIONS OR THE UNDISPUTED EVIDENCE OF MATERIALITY IN THIS CASE.**

Notwithstanding Hudson's assertions to the contrary, the Supplemental Report did not contradict Mr. Emerick's deposition testimony in this case. Rather, the Supplemental Report added to and/or further clarified the opinions Mr. Emerick intends to offer at trial. On the Errata Sheet, Mr. Emerick duly noted changes to his testimony concerning the matters contained in the Supplemental Report as follows, "I have since given these questions more thought and refer to my Supplemental Report as a further answer." *See Griffin Aff.* II, ¶19, Exh. S. The "Reason" provided in the Errata Sheet for the changes was "Clarification and further reflection." *Id.* In addition, Mr. Emerick devoted the first paragraph of his February 26, 2008 Supplemental Report, to explaining the reason for his supplemental opinions, as follows:

> I have been asked to provide this supplemental report to respond to topics needing further clarification and explanation. A deeper examination of the materiality of answers to each, individually, of the subject questions was raised and reflected in the depositions of both Mr. Austin and my own. I have had sufficient time to formulate my opinion on the materiality of the three questions at issue in this case, each individually. I have been able to reflect further as an underwriter to these issues and to compare my conclusions with other authorities on the matter of materiality. At issue in this matter and those subject to my further reflection are the following questions . . . .

*See Emerick Aff. IV,* ¶119. Nevertheless, Hudson insists on focusing the Court's attention exclusively on limited and unclarified deposition testimony, and drawing general unsupported

3

inferences as to Mr. Emerick's opinions on the issue of materiality. At the same time, Hudson disregards entirely other undisputed evidence of materiality and of Mr. Emerick's opinions on that issue consistent with the Supplemental Report, as described in this section of the Opposition.

### A. Hudson's Exclusive Focus On Limited And Unclarified Deposition Testimony Disregards Other Evidence Of Mr. Emerick's Opinions On Materiality Consistent With The Supplemental Report.

Hudson argues that Mr. Emerick's materiality opinion was premised on the *combination* of all three alleged misrepresentations and was not directed to each misrepresentation individually. Hudson Motion to Strike, pp. 1-2 *citing* (Deposition of Douglas R. Emerick ("Emerick Dep."), at pp. 81-82, 85). In support of its argument, Hudson relies exclusively upon limited excerpts of Mr. Emerick's deposition testimony.

Mr. Emerick's testimony must be understood in context. The excerpted questioning by Hudson's counsel focused on page 2 of Mr. Emerick's initial expert report. Hudson's counsel first read a portion of Mr. Emerick's initial written report which he identified as "opinion number two," as follows:

> A Financial Institution Bond underwriter probably would have taken a different underwriting stance if the actual nature of Hudson's operational processes had been accurately represented in this application. An underwriter would have most likely declined the bank or would have quoted the coverage based on strict conditions that certain internal controls be instituted.

Hudson Motion to Strike, p. 2 (*citing* Emerick Dep. at 81-82). At first, Hudson's counsel asked whether opinion number two "applied" to all three questions at issue together or was it independently applicable to each question, and Mr. Emerick answered as follows:

Q: Does your opinion number two <u>apply to</u> the three questions at issue together or is it independently applicable to each question?

A: It applies to all three questions <u>and could apply to one or more individually</u>.

*See Emerick Aff. IV*, ¶110, Exh. 11 (Emerick Dep.) at 84:20-24 (emphasis added). Hudson's counsel never followed-up on Mr. Emerick's response that opinion number two "could apply to one or more [application questions at issue] individually." *Id.*, ¶111, Exh. 11 (Emerick Dep.) at 84-85. Rather, Hudson's counsel shifted the focus of his questioning and changed terminology, asking whether opinion number two as written in the initial report, was "<u>directed to</u> 1.a. alone, question 1.a. alone?" *Id.* at 85:4-5 (emphasis added). Counsel objected. *Id.* at 85:6. Phrased in this way, Mr. Emerick testified, "No." *Id.* ¶112, Exh. 11 (Emerick Dep.) at 85:7. Then Mr. Emerick was asked about whether opinion number two was <u>directed to</u> "question 5.c. independently," and he responded "No." *Id.* at 85:17-19 (emphasis added). Also, Mr. Emerick was asked whether his opinion number two was "<u>directed to</u> question 1.b. alone?" *Id.* at 85:8-9 (emphasis added). He testified that "It possibly could be." *Id.* at 85:10. Finally, Mr. Emerick was asked whether opinion number two "was <u>directed to</u> the combination of all three questions." *Id.* at 85:20-22 (emphasis added). In response, Mr. Emerick stated, "As presented to me, that is how I wrote this opinion, yes." *Id.* at 85:23-24.

As indicated above, Mr. Emerick formed opinions on the questions as presented to him (as he understood them). *See Emerick Aff. IV*, ¶113, Exh. 11 (Emerick Dep.) at 85:23-24. While Mr. Emerick could not express with certainty, at that moment, whether opinion number two, as drafted in the initial written report, was specifically <u>directed to</u> any one of the questions at issue in this case standing alone when he wrote it, that does not mean that Mr. Emerick did not have and could not formulate an opinion on the issue of whether a misrepresentation as to any one of the questions at issue, alone or in combination with another, would influence an underwriter's decision to underwrite the Bond. *Id.*, ¶113. Mr. Emerick, had indicated during his deposition, that he was not comfortable forming opinions on the spot, without sufficient time to properly

5

analyze and consider the question being asked thoroughly. *Id.*, ¶114. Also, Mr. Emerick explained that not every sentence in his report expressed all of his opinions. *Id.* In fact, during Mr. Emerick's deposition, Progressive's counsel objected to Hudson's attempt limit Mr. Emerick's opinions exclusively to those written in the initial report. *Id.* Exh. 11 (Emerick Dep.) at 80:23-81:4.

As noted above, Hudson's counsel did not ask Mr. Emerick whether he "had formed an opinion" as to the materiality of each question individually, separately and apart from the other questions at issue in this case. Also, Hudson's counsel never asked Mr. Emerick whether he "had been asked to," "could," or "would" form an opinion as to the materiality of each question individually, or in combination. These would have been relevant and important questions for Hudson to inquire about if it was going to take the position that Mr. Emerick's opinions concerning materiality only applied to all three questions at issue in this litigation, *in combination*, despite testimony and evidence to the contrary, and especially given Mr. Emerick's testimony that opinion number two "could apply to one or more [application questions at issue] individually."

Moreover, there are other statements in Mr. Emerick's testimony and his initial report that reflect his opinions on the importance and materiality of each of the internal controls questions at issue in this litigation which are consistent with the Supplemental Report. For example, Mr. Emerick testified, "I immediately recognized that the internal controls questions were material to the underwriting of this bank, and then I tried to assess whether the answers were misrepresentations." *Id.*, Exh. 11(Emerick Dep.) at 72:19-73:6. Also, in Mr. Emerick's initial report he states:

- The materiality of the subject lending and other controls in a bank cannot be over emphasized in their importance to an underwriter to properly understand the hazard the bank is presenting. (p. 9)

- Internal controls are of overriding concern. (p. 9)

- Even one characteristic [of internal controls], if found unacceptable, could likely trigger a declination due to the importance of these controls needing to be in place and effective . . . . Having one or more of these aspects of the internal control system critically faulty might put an underwriter in mind of a dynamite factory where workers were allowed to play with matches. (p. 9)

- To meet the generally accepted standard, an internal control system must not only include the existence of policies, but also the enforcement and monitoring of the system. Without all components, the system, as planned by the institution, does not in practicality exist. (p. 10)

- Segregation of duties (question IV.5.c.) is one of the most critical internal controls that an underwriter requires for accepting a bank for Bond coverage. (p. 12)

*See Emerick Aff.* IV, ¶¶105-106, Exh. 13 (November 16, 2007 Report). Hudson's counsel chose not to question Mr. Emerick about any of these statements at deposition.

Read in their entirety, Mr. Emerick's deposition testimony and expert reports are consistent with his opinions stated in the Supplemental Report. Hudson's claim to the contrary is unfounded, and the Hudson Motion to Strike must be denied.

 **B.** **Because Mr. Emerick's Opinions In The Supplemental Report Are Consistent With Other Undisputed Evidence Of Materiality In This Case, Hudson Cannot Claim Surprise Or Unfair Prejudice.**

Further, because the opinions set forth in the Supplemental Report are supported by other undisputed evidence of materiality in this case, Hudson cannot credibly claim surprise or unfair prejudice. *See also* Section IV, below. Mr. Emerick's opinions that a misrepresentation of any one of the internal controls identified by the three application questions at issue in this case would increase the risk of loss to an insurer, would deprive an insurer of the opportunity to undertake a further investigation and ability to evaluate the fidelity risk involved, and would be

material to an insurer's decision to underwrite the bond merely reaffirms other undeniable evidence of materiality in this case. This includes the fact that: (1) the topic of internal controls was the focus of specific application questions;[2] (2) Progressive identified ███████████
████████████████████████████████████████████████████[3]
(3) Progressive's rules and underwriting ████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████[4] and (4) that Progressive consistently ███████████
████████████████████████████████████████████████████
████████████████████████████████[5] This irrefutable evidence is consistent with Mr. Emerick's opinions as expressed in the Supplemental Report.[6]

---

[2] *See* Local Rule Statement of Material Facts in Support of Defendant's Motion for Summary Judgment [docket entry no. 60 – unredacted version] ("Progr. Facts"), ¶¶ 27-30, 33, and 40. Hudson does not dispute the allegations contained in Paragraphs 28 and 29 of the Progressive Facts. As to the statements of fact in Paragraphs 27, 30, 33 and 40, Hudson has "object[ed] to Progressive's characterization of the material cited, which speaks for itself." This objection by Hudson does not dispute the content of the document(s) cited, and importantly, does not create a genuine issue of material fact. *See McConkie v. Nichols,* 392 F. Supp. 1, 9 n. 10 (D. Me. 2005) (noting that if an objecting party contends that the Statement of Material Facts misstates the referenced document, he should say so; it is not a proper objection to claim that the document "speaks for itself").

[3] *See* Progr. Facts, ¶¶ 44, 54-58, 60-61. Hudson does not dispute the allegations contained in Paragraphs 44, 54-57 (first sentence), 60-61. As to Paragraph 57 (second sentence), Hudson has "object[ed] to Progressive's characterization of the material cited, which speaks for itself." As noted in footnote 1, above, this objection by Hudson does not dispute the content of the document(s) cited, and does not create a genuine issue of material fact.

[4] *See* Progr. Facts, ¶¶ 57-58, 60-61. For the objections raised by Hudson relating to these Paragraphs, Progressive refers this Court to footnote 2, above.

[5] *See* Progr. Facts, ¶¶ 63-64. In response to the allegations contained in Paragraphs 63 and 64 of the Progressive Facts, Hudson states, "disputed for the reasons set forth in the Austin Report at pp. 8-10." As set forth in Progressive's Motion to Strike Affidavit of and Preclude Expert Testimony by William K. Austin, which arguments Progressive incorporates herein by reference, this Court should disregard the expert testimony of William K. Austin.

However, even if this Court were to consider the Austin testimony, Hudson fails to identify what specific facts, reasons and/or opinions stated in the Austin Report dispute the statements contained in Paragraphs 63 and 64. More importantly, there is nothing stated in pages 8 through 10 of the Austin Report that contradicts the facts stated in Paragraphs 63 and 64, namely that: (1) the issue of internal controls is extremely important to bond underwriters at Progressive; (2) ███████████████████████████████████████████

8

In sum, this Court should deny Hudson's Motion to Strike because the expert opinions contained in the Supplemental Report did not change or contradict Mr. Emerick's prior opinions and testimony, but merely added to and clarified certain statements Mr. Emerick made during his deposition, and because those opinions are fully supported by the undisputed evidence in this case.

## II. PROGRESSIVE SUPPLEMENTED ITS EXPERT DISCLOSURES TIMELY AND IN ACCORDANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURE.

Recognizing the importance of expert testimony in modern trial practice, the Federal Rules of Civil Procedure provide for extensive pre-trial disclosure of expert testimony. *See Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992). For example, Rule 26(e) of the Civil Rules requires a party to supplement its answers to interrogatories "if the party learns that the response is in some material respect incomplete or incorrect" and the other party is unaware of the new or corrective information. *See* Fed. R. Civ. P. 26(e)(2). That rule also requires a party to inform another party of a material <u>change in or addition</u> to information contained in an expert's pre-trial report. *See* Fed. R. Civ. P. 26(e)(1) (emphasis added). With respect to disclosure and supplementation of expert testimony, Rule 26(a)(2)(D) provides that "the parties must supplement these disclosures when required under Rule 26(e)." Rule 26 (e) states in pertinent part:

---

[redacted] *See* Austin Report at pp. 8-10. Hudson's citation to Austin's report is insufficient to create a genuine issue as to these facts.

[6] The expert testimony offered by Mr. Emerick on these and other issues is important to the fact finder to understand the specialized area and nature of fidelity bond underwriting; it is not merely cumulative evidence.

9

**(e)    Supplementing Disclosures and Responses.**

(1) *In General.* A party who has made a disclosure under Rule 26(a) - or who has responded to an interrogatory, request for production, or request for admission - must supplement or correct its disclosure or response:

> (A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing;

\*\*\*

(2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), <u>the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.</u>

(emphasis added). Mr. Emerick was identified as a testifying expert in this case and his expert reports were provided to Hudson's counsel in a timely manner in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(1)-(2). The Supplemental Report became necessary, in part, to clarify and remove any confusion that was created on the record as a result of the shifts in wording of the questions put to Mr. Emerick by Hudson's counsel ("apply to" versus "directed to") and his responses to those questions. Not only did Progressive supplement its expert disclosures and information, as required under Rule 26, but it did so timely. There is no question that the Errata Sheet and Supplemental Report were timely served on Hudson's counsel by electronic mail on February 28, 2008, within thirty (30) days of receiving the deposition transcript.[7] *See Griffin Aff. II*, ¶21, Exh. U. Also, pretrial disclosures are not yet due in this case. Therefore, Progressive complied with its obligations and duties under Fed. R. Civ. P. 26(e)(2) by supplementing the information "included in [Mr. Emerick's] report" and "given during [his] deposition" before any pretrial disclosures were due in this case.

---

[7]    The parties had previously agreed that all witnesses would have the opportunity to read, correct and sign their transcripts, and would have thirty (30) days from receiving their deposition transcript in which to do so.

Importantly, when the Supplemental Report and Errata Sheet were served on Hudson's counsel on February 28, 2008, Hudson did not object to either of them, did not request additional information from Progressive relative to the Supplemental Report or Errata, and did not ask Progressive to make Mr. Emerick available for further deposition testimony as to the matters in the Supplemental Report and Errata Sheet. *See* Rule32(d)(4) (in connection with completing and returning the deposition transcript, stating that objection is waived unless a motion to suppress is made <u>promptly</u>) (emphasis added). Now, in connection with Hudson's Opposition to Progressive's Motion for Summary Judgment filed on May 7, 2008, Hudson has moved to strike certain portions of the Emerick Affidavit, namely ¶¶ 7, 25, 26, 28, 29, and 30, which derive from Mr. Emerick's Supplemental Report, arguing that supplementation of Mr. Emerick's original report was a mere attempt to recant and correct prior deposition testimony in violation of Rule 26. Hudson Motion to Strike, pp. 1-3. This is simply not the case. Progressive acted in accordance with its duties and obligations under the Federal Rules of Civil Procedure. Therefore, the Court must deny the Hudson Motion to Strike.

**III.   THE SUPPLEMENTAL REPORT WAS SERVED AS PART OF EXPERT DISCOVERY, AND NOT GENERATED FOR THE PURPOSE OF OPPOSING HUDSON'S RENEWED MOTION FOR SUMMARY JUDGMENT.**

The notion that Hudson's Supplemental Report, and/or Mr. Emerick's affidavit which reiterates opinions stated in the Supplemental Report, were generated to create a conflict or issue of fact for summary judgment is unsupported by the record. Hudson Motion to Strike, p. 5. First, as detailed above, the Supplemental Report does not contradict Mr. Emerick's deposition testimony. The Supplemental Report was generated to clarify and remove any confusion that was created on the record as a result of the shifts in wording of questions Hudson's counsel put to Mr. Emerick during his deposition on the issue of materiality and the testimony he provided I response. *See Emerick Aff. IV,* ¶117; *see also* Section I, above. Second, the Supplemental

11

Report was served as part of the expert discovery phase of this case. It was served along with the deposition Errata Sheet within the thirty (30) days following receipt of Mr. Emerick's deposition transcript, as agreed to by the parties. *See Griffin Aff. II*, ¶¶20-21, Exh. T-U. Moreover, it was served thirty (30) days <u>before</u> the dispositive motions were due, not created <u>afterwards</u> to oppose Hudson's motion for summary judgment. Hudson raised no objection when it received the Supplemental Report.

There can be no doubt that the Supplemental Report was not issued in connection with Progressive's opposition to Hudson's Renewed Motion for Summary Judgment, or for the purpose of creating an issue of fact. Therefore, this Court must deny Hudson 's Motion to Strike.

### IV. PROGRESSIVE SHOULD NOT BE PENALIZED FOR ACTING IN ACCORDANCE WITH ITS RIGHTS AND OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.

Remarkably, Hudson has argued that Progressive should be penalized for doing the very thing that it was entitled and required to do under the Federal Rules of Civil Procedure. See Section II, above. Relying on *Licciardi v. TIG Ins. Group*, Hudson argues that allowing Mr. Emerick and Progressive to use a "Supplemental Report" to correct previous deposition testimony would amount to unfair surprise prejudicial to Hudson. Hudson Motion to Strike, pp. 4-7 (*citing* 140 F.3d 357, 364-365 (1st Cir. 1998)) ("*Licciardi*"). The facts of *Licciardi*, however, are fundamentally different from the facts of this case. In *Licciardi*, the expert <u>at trial during his direct examination</u>, for the first time offered two new items of testimony that were "180 degrees from his report in his testimony on a key topic at the heart of the plaintiff's case." *Id.* at 359. Not only did the expert in *Licciardi* venture into a new area of testimony without prior disclosure to the opposing party, but the supplemental answers to interrogatories filed two days <u>after the jury was impaneled</u>, revealed that "the expert's testimony would be the same as in his initial

report." *Id.* at 359.[8] The Court's analysis and consideration of whether to impose sanctions for unfair surprise and prejudice was in the context of the proponent's attempt to offer the new evidence at trial. *Id.* at 363 (noting that among the factors to consider in such circumstances is "the conduct of the trial, the importance of the evidence to its proponent, and the ability of the [opposing party] to formulate a response") (citations omitted).

Notably, the Court in *Licciardi* recognized the importance of timely supplementing one's expert disclosures, stating: "the purpose of the disclosure and supplementation requirements of Rule 26 was to alleviate 'the heavy burden placed on a cross-examiner confronted by an opponent's expert whose testimony has just been revealed for the first time in open court.'" *Id.* (*citing Johnson v. H.K. Webster, Inc.* 775 F.2d 1, 7 (1st Cir. 1985)). However, that does not mean that having supplemented expert disclosures, an expert is boxed-in and is forbidden to provide opinions beyond those identified. *See Johnson v. H.K. Webster, Inc.* 775 F.2d at 7 (stating that "if the rule called for supplementation in all instances, the actual trial would be merely a recital of earlier responses to written interrogatories and deposition questions"). Progressive did precisely what Rule 26 requires– supplemented its disclosures timely, thereby negating any risk to Hudson in being surprised at trial by the information contained in the supplementation.

---

[8] Also distinguishable is *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, cited by Hudson, in which one of the parties sought to introduce a <u>new</u> testifying expert, after the expert designations deadline had closed. 145 F.3d 320, 324 (5th Cir. 1998). Progressive has not belatedly designated a new expert. Also, the court noted that no accompanying written report as required by the scheduling order and Rule 26(a)(2)(B), were provided until some three (3) months later. *Id.* Under those facts, the Court excluded the proffered expert evidence. *Id.* Here, Progressive provided a written supplemental report promptly.

As to the *Keener v. US* case cited by Hudson, the court found that the disclosures were untimely and the nature of the second disclosure was so substantially different from the first that it fell outside any reasonable notion of correcting an incomplete or inaccurate expert report, and therefore excluded the evidence as untimely, 181 F.R.D. 639, 642 (D. Mont. 1998).

Also, in the case of *Hartford Ins. Co. v. Gen. Elec. Co.*, 526 F. Supp. 2d 250, 253 (D.R.I. 2007), cited by Hudson, the untimely proffered testimony was excluded for other reasons, namely the fact that the testimony "provided no scientific basis" or support for the opinion, that the expert conclusions were "nothing more than rank speculation" and that the proffered expert's theory was not "borne out by the whole of the expert's report or deposition testimony." *Id.* Clearly that is not the case here. Mr. Emerick's opinion, including the opinions expressed in the Supplemental Report, are properly supported and are consistent with the other factual evidence of materiality presented in this case.

In this case, Hudson cannot claim prejudice or unfair surprise. Progressive supplemented timely, and the opinions contained in the Supplemental Report were consistent with Mr. Emerick's initial and supplemental expert reports and deposition testimony, as well as the other undisputed evidence of materiality presented in this case. Further, no trial date has been set, and no pre-trial conference has been scheduled in this case. Therefore, Hudson cannot claim it was "ambushed" at or on the eve of trial.

Progressive cannot be penalized for acting in accordance with its rights and obligations under the Federal Rules of Civil Procedure. For all these reason, the Hudson Motion to Strike must be denied.

## **CONCLUSION**

For the foregoing reasons, this Court must deny Hudson's Motion to Strike, and grant such other and further relief as this Court deems just and proper.

15

|  | PROGRESSIVE CASUALTY INSURANCE COMPANY By its attorneys, |
|---|---|
|  | HOLLAND & KNIGHT LLP |
|  | /s/ Deborah S. Griffin<br>Deborah S. Griffin (BBO #211460)<br>Gina A. Fonte (BBO #642367)<br>10 St. James Avenue<br>Boston, MA 02116<br>Tel: (617) 523-2700<br>Fax: (617) 523-6850 |
| Dated: May 20, 2008 | E-mail: gina.fonte@hklaw.com |

## CERTIFICATE OF SERVICE

I, Deborah S. Griffin, counsel for the Defendant, Progressive Casualty Insurance Company in the above-captioned proceeding, hereby certify that on this 20th day of May, 2008, that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). Presently there are no non-registered participants.

/s/ Deborah S. Griffin

# 5351396_v1